IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:23-cr-03004-SRB ) |
| EZEKIEL J. KING, | ) ) ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON THE UNCONSTITUTIONALITY OF 18 U.S.C. § 922(g)(3) WITH BRIEF IN SUPPORT

### INTRODUCTION

The Defendant, moves the Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss the Indictment, which charges the Defendant in Counts I and III with possession of a firearm while being an unlawful user of marijuana, in violation of 18 U.S.C. § 922(g)(3). The statute is unconstitutional in light of the U.S. Supreme Court's recent ruling in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The restriction contained in § 922(g)(3) prohibits possession of a firearm for any person "who is an unlawful user of or addicted to a controlled substance." Because the Government cannot demonstrate that prohibiting such conduct is consistent with the Nation's historical tradition of firearm regulation, the Indictment must be dismissed.

### STATEMENT OF FACTS

A complaint and supporting affidavit have been filed in this case. (Doc. 1). An indictment by grand jury was then entered charging the Defendant with possession of a firearm while being an unlawful user of marijuana, in violation of 18 U.S.C. § 922(g)(3) in two separate counts. (Doc. 13). The affidavit provides a detailed articulation of the facts in this matter and purports to

state probable cause to believe that the offenses charged were committed by this Defendant.

## February 15, 2022 Traffic Stop

The Defendant is charged with being in possession of firearms and being a user of a controlled substance on February 15, 2022. (Doc 13). The Defendant was stopped by officers with the Springfield, Missouri, Police Department because he was driving erratically. (Doc. 1). During that stop, officers located a black AR style rifle in the backseat that the Defendant claimed. (Doc. 1). That rifle was loaded with 31 rounds of ammunition. (Doc. 1). Officers located a Glock semi-automatic with an extended magazine, and loaded with 29 rounds of ammunition, which the Defendant admitted to putting under his seat. (Doc. 1). Under the same seat, officers located another extended magazine with 19 rounds of ammunition, and two factory Glock magazines each containing 10 rounds. (Doc. 1). In regard to possession of firearms, in Missouri, under both state and federal law, a 19-year-old can possess both a handgun and a long gun, and can conceal it without a permit to do so. Thus, there was no allegation in the affidavit that King's simple gun possession was illegal. (Doc. 1-2).

In regard to being a user of a controlled substance, the only allegation involves marijuana and it is detailed in paragraphs 10 and 11 of Agent Wine's affidavit. (Doc. 1-2, Page 3-4). It states that during the traffic stop, that the officer smelled marijuana, searched the vehicle and found a misdemeanor amount of marijuana in Jardell Williams' backpack. (Doc. 1-2). The officer did not find anything in King's possession. (Doc. 1-2). Williams also admitted that the marijuana was his. (Doc. 1-2, ¶10). King did not admit possession. All King said was that he "regularly smokes marijuana." He did not admit to being in possession of marijuana that day, he did not admit to smoking it that day, and the officer took no action to determine if he was a user or under the influence of marijuana on February 15, 2022. (Doc. 1-2). Ultimately, there was no

evidence or even an allegation that King <u>used</u> or possessed marijuana on February 15, 2022.

## October 22, 2022 Traffic Stop

The Defendant is also charged with being in possession of firearms and being a user of a controlled substance on October 22, 2022. (Doc 13). A vehicle that the Defendant was travelling in was stopped for a traffic violation. (Doc. 1). During a probable cause search of the vehicle, a loaded semi-automatic pistol was found at the Defendant's feet. (Doc. 1). The firearm had a high-capacity magazine inserted into it, which had 36 rounds loaded into it. (Doc. 1). The Government has received a lab report showing that the Defendant's fingerprints were found on the firearm found at his feet on that October 22, 2022, incident. (Doc. 1). In regard to possession of firearms, in Missouri, under both state and federal law, a 19-year-old can possess both a handgun and a long gun, and can conceal it without a permit to do so. Thus, there was no allegation in the affidavit that King's simple gun possession was illegal. (Doc. 1-2).

In regard to being a user of a controlled substance, the only allegation involves marijuana and it is detailed in paragraph 18 of Agent Wine's affidavit. (Doc. 1-2, Page 6). It states that during the traffic stop, that the officer smelled marijuana and searched the vehicle, but found no marijuana. King said that he was a "user of it every other week." He did not admit to being in possession of marijuana that day, he did not admit to smoking it that day, and the officer took no action to determine if he was a user or under the influence of marijuana on October 22, 2022. (Doc. 1-2). Ultimately, there was no evidence or even an allegation that King <u>used</u> or possessed marijuana on October 22, 2022.

## **ARGUMENT & AUTHORITY**

Section 922(g)(3) violates the Second Amendment, facially, and as applied, because historical traditions do not support prohibiting persons who are accused of being a "user of" or

3

"addicted to" a controlled substance from possessing firearms.

### I. Section 922(g)(3) Unconstitutionally Infringes on an Individual's Right to Bear Arms Under the Second Amendment.

The Second Amendment to the United States Constitution "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). This right "shall not be infringed." U.S. CONST. amend. II. The right to keep and bear arms is fundamental, applicable against state and local governments, and entitled to the same protections as other fundamental rights enshrined in the Constitution. *See, McDonald v. City of Chicago*, 561 U.S. 742 (2010). Still, Congress passed § 922(g)(3), a law that strips citizens of rights guaranteed to them by the Second Amendment without any historical precedent. The criminalization of the possession of firearms falls within the scope of the Second Amendment. Thus, the blanket prohibition on firearm possession by those who are unlawful users of or addicted to a controlled substance is unconstitutional under the Supreme Court's new *Bruen* analysis.

After the U.S. Supreme Court's *Heller* decision in 2008, "most federal appellate courts applied a two-step framework using a means-ends analysis to determine the constitutionality of § 922(g) restrictions on Second Amendment rights." *U.S. v. Jackson*, CR-22-59-D – Order dated 8/19/2022 (ECF #45). However, in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Court adopted a new standard for determining the constitutionality of regulation based on the Second Amendment. The Court stated,

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation."

*Id.* At 2129-30.

Therefore, the first step in the Court's analysis is to determine whether the plain text of the

Second Amendment covers a defendant's conduct.

### a. The Second Amendment's plain text covers conduct at issue in § 922(g)(3).

In *Bruen,* the Court stated that the Second and Fourteenth Amendments "protect an individual's right to carry a gun for self-defense outside the home." *Id.* At 2122. The decision further acknowledged "that the right to "bear arms" refers to the right to "wear, bear, or carry...upon the person or in the clothing or in a pocket, for the purpose...of being armed and ready for offensive or defensive action in a case of conflict of another." *Id.* At 2134. (quoting *Muscarello v. U.S.*, 524 U.S. 125, 143, 118 S. Ct. 1911, 141 L.Ed 2d 111 (1998). Section 922(g)(3) is a complete bar on firearm possession. It is not limited by the type of firearm or the purpose for which the firearm might be used. Nor is it limited to firearms possessed in a particular public area. It applies with equal force to firearms kept in the home for self-defense. A person's ability to possess a firearm for self-defense is the central component of the Second Amendment right. Thus, the conduct of any individual charged under this statute is clearly covered by the plain text of the Second Amendment.

### b. The Government cannot meet its burden to show that § 922(g)(3)'s restrictions are "consistent with the Nation's historical tradition of firearm regulation."

The second step of the *Bruen* analysis places the burden on the government to demonstrate that the regulation is consistent with the "Nation's historical tradition of firearm regulation." Under *Bruen's* new model, disarmament laws that address persistent social problems require evidence that similar provisions existed at the time of ratification. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen* at 2131. With this understanding, the government clearly cannot meet its burden to show that the Nation's history, particularly

around the passage of the Second Amendment, supports firearm restrictions for those addicted to, or who unlawfully used, a controlled substance.

As in *Heller* and *Bruen*, historical examples of regulations offered by the government must be "distinctly similar" to § 922(g)(3) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" See *Bruen*, 142 S. Ct. at 2132–33. There are no "distinctly similar" regulations from the founding. Indeed, the history of barring firearm possession by those who use or are addicted to controlled substances (or narcotics in general) is limited and relatively recent. Congress first passed § 922(g)(3) in 1968. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq.*). This was the first time in the Nation's history that Congress enacted such a ban. The government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second Amendment. See *Bruen*, 142 S. Ct. at 2137. In fact, the Supreme Court specifically declined to consider any twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* 142 S.Ct. at 2154, n. 28.

Nor can the Government rely on the general pronouncement by the Supreme Court in *Heller* that presumptively lawful regulatory measures include: "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller* at 626-27. The list does not include those who are accused of being an unlawful user of a controlled substance. Those regulations would not be "distinctly similar" to § 922(g)(3) to address a "general societal problem." Even if § 922(g)(3) were a uniquely modern regulation, such that the Court could expand its historical analysis to include merely

similar historical analogues, those longstanding regulations are not "relevantly similar" because they do not impose a comparable burden or evince comparable justifications. See *Bruen*, 142 S. Ct. at 2132-33. While the examples provided by the Court in *Heller* were not exhaustive, they generally all comport with a historical principle of disarming select groups for the sake of public safety. *See NRA*, 700 F.3d at 200-01 (citing Saul Cornell, *Commonplace or Anachronism: The Standard Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory*, 16 Const. Comment. 221, 231–36 (1999)). There is no comparable "public safety" justification for disarming all drug users. Moreover, the Supreme Court has since explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. Therefore, the Government cannot rely on general public safety justifications to uphold § 922(g)(3).

Even if this Court finds that § 922 (g)(3) does not violate the Second Amendment on its face, the statute should not apply to a person like the Defendant, who was merely found with a controlled substance in his vehicle and who has no criminal history of using controlled substances. This set of circumstances is not "distinctly similar" or even "relevantly analogous" to founding era prohibitions on the right to bear arms. Though intoxicants existed at the founding, the government cannot establish that eighteenth century history supports stripping a man of his ability to defend himself because he was a user of an intoxicant. Because the Government cannot establish that § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation it violates the Second Amendment facially and as applied to Mr. King.

## **CONCLUSION**

This issue was most recently addressed in the case of *U.S.A. v. Jared Michael Harrison*, Case No. CR-22-00328-PRW (W.D. Oklahoma, Feb. 3, 2023) wherein the court dismissed the

government's 922(g)(3) charges on the second amendment grounds for the exact reasons recited in this motion. Section 922(g)(3) impermissibly restricts a person from exercising their right to defend themselves, their families, and their homes. Because there is no historical precedent to support the regulation, the provision is unconstitutional, and the Indictment against Mr. King should be dismissed.

Respectfully submitted,

ROBERTS & EASLEY, LLC

_/s/ Joshua K. Roberts_
Joshua K. Roberts
Missouri Bar No. 47823
2202 W. Chesterfield Blvd.
Suite 100
Springfield, Missouri 65807
Phone: 417-881-1076
Fax: 417-881-3273
Email: jroberts@robertsandeasley.com
ATTORNEY FOR DEFENDANT
EZEKIEL J. KING

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was duly filed this 14th day of April, 2023, using the CM/ECF electronic filing system and a copy thereby transmitted, via electronic mail, by the Clerk of the United States District Court to all interested counsel, including counsel or record for Plaintiff as follows:

Ms. Stephanie Wan, AUSA
U.S. Attorney's Office
901 E. St. Louis, Suite 500
Springfield, Missouri 65806

_/s/ Joshua K. Roberts_
Joshua K. Roberts
Counsel for Defendant